---

## Case No. 9,032.

### Ex parte MANN.

[3 App. Com'r Pat. 367.]

Circuit Court, District of Columbia. 1860.

PATENTS—HOOP-SKIRTS—PROCESS—MACHINE—USED FOR OTHER PURPOSES.

[A new and useful process for the making of hoop-skirts is patentable, although effected by the use of a "former" previously known and used for other purposes.]

Appeal from the commissioner of patents.

[Application by Robert J. Mann for letters patent for an improved method of making

hoop-skirts. A patent was refused by the commissioner. Applicant appeals.]

MORSELL, Circuit Judge. He states his claim thus: "What I claim as my invention, and desire to secure by letters patent is the method of forming hoop-skirts by applying the hoops and tapes, or their equivalents, to each other, while they are supported in the relative positions which they are to occupy in the finished skirt, substantially as set forth in my specification." He says: "The object of my invention is to avoid the marking (which had been before necessary, as particularly stated) and at the same time to afford a convenient means for supporting the hoops at the time the connection between the hoops and tapes is being effected, and it consists in applying the tapes to the hoops, while the number of each series is supported in the relative positions which they are to occupy with respect to the other members of both series in the finished skirt." He then describes the form particularly, and afterwards further says: "By the method of forming skirts above described, the labor of marking the tapes and hoops is dispensed with, and the frame supports the hoops and tapes in convenient position for the connection of the two. By it moreover a symmetrical form in the skirt, and the uniformity of the size and shape of a multitude of skirts made by different operatives, is ensured. It is of course necessary to provide a former for each shape of skirt, but the same former will answer for skirts of the same shape with different numbers of hoops."

The decision of the commissioner is dated the 31st of December, 1859, and adopts the report of a majority of the board of directors dated the 28th of December, 1859, the substance of which is, after reciting the examiner's opinion, that, "as formers for a great variety of purposes have long been in common use, it is not patentable to adapt a former to the especial purpose of making hooped skirts and to exemplify," etc. The commissioner says: "In other words, the examiner assumes, as we understand him, that there is no invention, in the sense in which the patent laws use the word, in such an adaptation, although it might result in very greatly cheapening the manufacture of the article, the result alone being insufficient, under our statute, to authorize the grant of a patent in the absence of any novelty in the means to produce it."

Against this reasoning the counsel for applicant urges, etc, and cites adjudications for his position. The commissioner, in his notice of these authorities, says: "These English adjudications, to the extent, probably, of deciding that the result alone, where the effects produced are shown to be more economical, useful, and beneficial to the public, in the manufacture of a better article, are of themselves conclusive tests of the invention and novelty. On the other hand, the preponder-

ance of American authorities is to the effect that the result alone will not be sufficient for that purpose, but that it must also appear that the result was produced by some new process, device, mode, or by some new machinery, and that a patent can in no case be granted for an effect only. But," says the commissioner, "we need not go into an extended or detailed examination of the authorities, either English or American, which counsel has cited, with a view of determining whether his legal proposition be correctly taken or not, because, if, upon enquiry, in point of fact, applicant claims the 'former,' his application is concluded by a prior report of ours in a case presenting substantially the same invention he presents."

Is the "former" the thing claimed? The proposition that it is not amounts, when subjected to analysis, to the assertion that, because all formers are embraced by the claim, when used under certain conditions of formation, therefore no former is claimed. The idea involves a metaphysical distinction quite too refined and subtle, as we think, to bear the test of a rigid examination. To our minds, insomuch as the method which is claimed necessarily involves the use of a former to carry it into execution, the claim practically goes to the former itself, whenever it assumes the specific conditions of formation or construction presented, and is made susceptible of use in the manufacture of skeleton skirts. Any other interpretation involves the glaring absurdity of an interdiction of the use by the public of something which is not claimed. In the event of a patent going out, we shall therefore give this interpretation to it, and regard it as really being a claim to the use of formers for the specified purpose of making hoop-skirts. And inasmuch as the case, to which we have alluded as having been acted upon heretofore by us, presented, we may say, the identical invention, and the claim in that case being substantially the same also as that presented by applicant, construed as we construe it, to this report is appended the decision and reasons of the board in the case of Datus E. Rugg, which the board thinks shows the claim in this case to be inadmissible.

This decision is dated October 13, 1859, rejecting the claim for want of patentability. The description given of the claim by the board has some resemblance to that of the appellants as to the former, and the references appear to be of the same character with those in the present report. But there are depositions filed in this case and laid before the commissioner to show that the claim of appellants was for an invention of a prior date. A learned dissenting opinion, written by one of the board of appeal, with references to a number of pertinent decisions, is also appended.

The appellant filed three reasons of appeal: 1st. Because the applicant's invention is an improvement on an art, viz.: a new method

of making ladies' hoop-skirts, and the commissioner in said decision has not distinguished between an improvement in an art and an improvement in a machine used in practicing an art. 2nd. Because it has not been shown by the commissioner that the same invention or discovery had been invented or discovered by any other person in this country prior to the alleged discovery thereof by the applicant, or that it had been patented or described in any printed publication in this or any foreign country, or had been in public use or on sale with the applicant's consent or allowance two years prior to the application for a patent. 3rd. Because the statute of 1836 [5 Stat. 117] authorizes the grant of a patent for any new and useful improvement in any art, and it is not denied that the invention of the applicant is a new and useful improvement in the art of making ladies' hoop-skirts, as distinguished from other useful arts.

In this state of the case all the original papers, documents, and references, with the opinion and report of the commissioner and reasons of appeal, were laid before me, according to previous notice, duly given, of the time and place of hearing this appeal, when the appellant appeared by his counsel and filed a written argument and submitted the case. Before entering upon the investigation of the merits of the questions presented it will be necessary to ascertain what really is the invention claimed. The substance of it, as contended for by the appellant, is: "A new and useful improvement in the art of making ladies' hoop-skirts." The commissioner says it is practically for "the former," and that it is identical with the claim of Datus E. Rugg, which is for a patent for a block or frame on which to construct skeleton skirts, decided on by the office October 13, 1859. In other words, as above stated, that the present is a claim for an improvement of "the former," in as much as the method as claimed necessarily involves the use of a former to carry it into execution. The appellant denies claiming an invention for a former.

To understand, then, what the claim precisely is, and its object and purpose, the specification must be resorted to, the whole of which may be taken together. In the petition part, appellant states: "That he has invented a new and useful method of manufacturing ladies' hoop-skirts which he verily believes has not been known or used prior to the invention thereof by him. He therefore prays that letters patent may be granted to him therefor, vesting in him and his legal representatives the exclusive right to the same," etc. It is true that in the summary, as before recited, and in the part to which he refers, the new method or process consists in producing the skirt by a series of operations effected by the aid of a frame called a former, having a special adaptation to the purpose in view; but he claims it and its equivalents merely as incidental to the attainment of the object and purpose of his invention,—that of saving much labor and expense, and the result a much cheaper article to the public than that produced before by the old method.

To the aforegoing effect is the rule laid down in Burt. Pat. § 229, that, "whenever the real subject covered by the patent is the application of a principle in arts or manufactures, * * * the question on infringement will be as to the substantial identity of the principle, and of the application of the principle; and consequently the means, machinery, forms, or modifications of matter made use of will be material only so far as they affect the identity of the application." The case shows that all the prerequisites of the statute have been complied with, and it is in proof that by the new method pursued in this case, the separate measuring of the hoops and tapes necessary in practicing the old method is dispensed with, and a great saving of hard labor is the useful result of the applicant's method, the hand labor in the two methods being in the proportion of 36 to 3 on plain skirts and 36 to 2 on trail skirts. On comparison, it appears that the two are substantially different in the mechanical operations involved in each, and in the means used for performing those mechanical operations. The statement of Mr. Examiner Toll, who was the examiner in the first instance in this case, proves that the appellant was the first who devised this method of proceeding, or practical application of the principle, as described by the appellant. He also says, "that it is not known that a frame such as is described in the appellant's specification, and called a 'former,' fitted with proper appliances for determining the relative positions of the hoops and tapes of a skirt was made before the date of the invention of the appellant for any purpose whatever," and it is conceded that a skirt was never made so before. Thus it seems to me to be a strong case upon the facts as presented. How is it as to the application of the law upon the subject?

The report of a majority of the board states that the examiner refused to allow this claim on the ground that, inasmuch as formers for a great variety of purposes have long been in common use, it is not patentable to adapt a former to the especial purpose of making hoop-skirts, etc. This certainly was laying down the principle of patent laws much broader than has been done by any decision I have ever seen, and for that reason, perhaps, the board, in the following part of the report, modifies it thus: "In other words, the examiner assumes, as we understand him, that there is no invention, in the sense in which the patent laws use the word, in such an adaptation, although it results in very greatly cheapening the manufacture of the article; the result alone not being sufficient, under our statute, to authorize the grant of a patent, in the absence of any novelty in the means to produce it." But even with this

modification if intended to be applied to this case, I cannot agree. The learned research and judicious application of the true principles of the law on this subject by the dissenting member of the board are so full and clear, to show the incorrect view of the majority, that scarcely anything is left for me to say.

With a view, however, to show that the American decisions are in strict accordance with the English, I will state a little more fully the case of Boulton v. Bull, 2 H. Bl. 468–500. Among other things it is stated by Tindal, C. J., on delivering the judgment of the court, after stating the facts, thus: "We are of the opinion that, if the result produced by such a combination is either a new article, or a cheaper article to the public, than that produced before by the old method, such combination or manufacture was intended by the statute, and may well become the subject of a patent." He then cites the opinion of Abbat, C. J., that a patent may be had for a new process, to be carried on by known implements or elements, acting upon known substances, ultimately producing some other known substances, or producing it in a cheaper or more expeditious manner, or more useful kind. And the decision of Lord Eldon that there may be a valid patent for a useful combination of materials previously in use for the same purpose, or even for a useful method of applying such materials and continues: "There are numerous instances of patents which have been granted where the invention consisted of no more than in the use of things already known, and acting with them in a manner already known, and producing effects already known, but producing those effects so as to be more economical or beneficially enjoyed by the public."

American authorities: Kneass v. Schuylkill Bank [Case No. 7,875], Judge Washington: "Is this a discovery of an art, machine, &c., or of an improvement in any art, machine, &c.? If it be either, it is the subject of a patent by the express words of the act of congress." Gray v. James [Id. 5,718], by the same judge: "The patent is supposed to be for the machine, which is composed of parts that long have been public property. This is not the fact. The patent is for an improvement in the art of making nails by means of a machine which cuts and heads nails at one operation. It is therefore not the grant of an abstract principle, nor is it the grant of the different parts of any machine, but of an improvement applied to a practical use effected by a combination of various mechanical powers to produce a new result." So in the case Kneass v. Schuylkill Bank [supra]: The art of printing with both letter-press and copper-plate was not the invention of the plaintiff. He made use of old materials and processes in a new manner for the purpose of producing a new effect, namely a new security against counterfeiting. His patent, therefore, was for the new application of the process of printing by copper plate and letter press, by printing on both sides of the note, &c., held to be an art within the terms of the statute.

And such, so far as I can ascertain, have been the rulings in all the federal courts in which the subject has been brought before the court. I shall only particularly mention one other case, Le Roy v. Tatham decided in Judge Nelson's circuit court and brought up by appeal, and to be found in [Le Roy v. Tatham] 14 How. [55 U. S.] 156. The court charged the jury that "the result is a new manufacture, and even if the mere combination of machinery, in the abstract, is not new, still, if used and applied in the connection of a practical development of a principle newly-discovered, producing a new and useful result, the subject is patentable." In his further charge to the jury, he says that "it was not material whether the mere combinations of machinery referred to were similar to the combination used by the Hansons, because the originality was not considered in the novelty of the machinery, but in bringing a newly-discovered principle into practical application, by which a useful article of manufacture is produced, and wrought pipe made as distinguished from cast pipe."

It is true the supreme court reversed this case, but it was upon the ground that the specification was not sufficiently precise. The court says: "It would seem that where a patent is obtained without a claim to the invention of the machinery through which a valuable result is produced, a precise specification is required, and the test of infringement is whether the defendants have used substantially the same process to produce the same result." And, further, the supreme court says: "The other rulings of the court (circuit court) are substantially correct." Now the decision of the circuit court was principally based upon the English authority reported in H. Blackstone (Boulton v. Bull, 2 H. Bl. 13, 31, 463, 496, 493, 495, and 213, & Ald 340, 350; Webst. Pat. Cas. 147, 342, 377, 310, 683, 684, 698, 717). I think therefore, that it must appear clearly to any one who will give himself the trouble carefully to examine, that there is the strictest harmony between the American and English authorities on this subject. That although the appellant disclaims the apparatus as a part of his invention, he has a right to claim the use of it as incidental and subsidiary to the practical purpose of the new and leading idea constituting the invention. What is claimed is that it never had been before applied or used in the way and for the purpose he has used it and applied it, namely, as a very great labor-saving, expeditious, less expensive, and much cheaper method of producing the article. It would, therefore, be immaterial, even if it were proved that the apparatus were old. It is not claimed as a merely abstract principle or result, but as being clothed as pointed out in a concrete

device. This distinction, not properly understood, seems to be the ground of confusion indicated in the reasons stated in the decision.

I have carefully considered the case, and am satisfied that there is error in the commissioner's decision, and therefore do hereby reverse and annul the same, and do hereby direct that a patent be issued as prayed.